**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 97-60610

JARVIOUS COTTON, LARRY P. JACKSON, ROBERT BRENT LAYNE,
RONNIE SMITH and KENNETH W. GARRISON,

Plaintiffs-Appellees,

versus

SHIRLEY TAYLOR, BRENDA BROWN, WILLIAM HOSKINS,
STEVE W. PUCKETT, RALPH HAMES, LEE ROY BLACK,
and WILLIE BROWN,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Mississippi

(4:92-CV-63-D)

March 9, 1999

Before DAVIS, STEWART, and PARKER, Circuit Judges.

PER CURIAM:[*]

This case requires us to determine whether the district court committed clear error or

otherwise misapplied the law in finding that the plaintiffs were deprived the minimum standard of

confinement required under the Eight Amendment. We must also determine whether the district

court erred in awarding plaintiff, Larry P. Jackson, damages after Jackson signed a notice voluntarily

dismissing himself as a party. For the reasons stated herein, we reverse.

<u>Factual and Procedural Background</u>

Jarvious Cotton, Mississippi prisoner # 34463; Larry P. Jackson, # 48890; Robert Brent

---

[*]Pursuant to 5th CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th CIR. R. 47.5.4.

1

Layne; Ronnie Smith, # 37556; and Kenneth Garrison, # 73717, filed this 42 U.S.C. § 1983 action against Shirley Taylor, correctional officer; Brenda Brown, correctional officer; William Hoskins, Associate Warden of Unit 29 at Parchman; Steven Puckett, Superintendent of the Mississippi State Penitentiary; Ralph Hames, Assistant Unit Administrator of Unit 29; Lee Roy Black, Commissioner of the Mississippi State Penitentiary; Ronald Welch, the class litigation counsel for the Mississippi State Penitentiary; and Willie L. Brown, State Health Inspector. In their second amended complaint, the plaintiffs alleged claims relating to the opening of their mail, the policy concerning how many packages they could receive, and a leaking roof in Unit 29 where they were housed.

The district court granted summary judgment for the defendants on the mail and package claims, and the case proceeded to a trial on the leaky roof claim. A trial was held before the magistrate judge. The magistrate judge recommended that judgment be entered for the defendants. The magistrate judge stated that the evidence showed that the consensus of the witnesses was that the ten-year-old roof of Unit 29 leaked during every heavy rain sometime during 1991.[1] The leaking was so severe that sleeping bunks, clothing, and other personal possessions became saturated, electrical outlets sparked, and water collected on the floor. At least one correctional officer testified that he wore a raincoat when working in Unit 29 during this period. The five plaintiffs testified that they lost personal property, suffered recurring colds, lost sleep, and suffered emotional distress. Although the staff physician testified that only one plaintiff, Smith, sought medical attention for cold or flu-like symptoms, the plaintiffs testified that they bought over-the-counter medications every month from the canteen. The magistrate judge found that the roof problem was severe and deprived the plaintiffs of minimally safe housing.

The magistrate judge stated that the physical plant director of the prison, Jim Harman,[2] became aware of the problem at Unit 29 in December 1991. Because the roof was still under

---

[1] Aside from the duration of the conditions, the facts relating to the leaking roof, the conditions created in the cells, and the defendants' repair efforts are not in dispute.

[2] Jim Harman was not named as a defendant.

warranty, notice was given to the company who had installed the roof, and the company had 30 days to respond under the contract. Three crews worked on the roof, attempting to repair it with felt and plastic roof cement yet their efforts were ultimately unsuccessful. Unit 29 needed a new roof which would cost an estimated $400,000.00. The Bureau of Buildings requested bids and awarded a contract. The new roof was installed in May 1992. In the interim, inmate crews worked to repair the leaks with tar. Harmon testified that the authorities at the prison encouraged him to do whatever was necessary and to work as quickly and efficiently as possible. The magistrate judge found that the evidence demonstrated the defendants' efforts to remedy the problem effectively and expeditiously. The magistrate judge further found that because of limited space at the Mississippi State Penitentiary, the defendants had no meaningful alternative but to continue to house the prisoners in that unit. The magistrate judge concluded that the defendants were not deliberately indifferent to the living conditions of the plaintiffs.

The plaintiffs filed objections to the magistrate judge's report. The district court judge ordered transcription of the trial for his review. The district court did not adopt the recommendation of the magistrate judge, stating that the magistrate judge did not correctly assess the facts in evidence when reaching his conclusions. The district court found that the leaky roof condition existed from sometime late in 1991 to May 1992. Id. The district court briefly summarized the severity of the leaks and the efforts of the defendants to repair it. The district court acknowledged that the magistrate judge had correctly stated the applicable deliberate indifference standard for analyzing the plaintiffs Eighth Amendment conditions-of-confinement claim and agreed with the magistrate judge that the conditions deprived the plaintiffs of minimally safe housing.

However, the district court did not agree with the magistrate judge's conclusion that the defendants were not deliberately indifferent. According to the district court, there was insufficient evidence to support this finding. The district court reasoned:

> In light of the defendant's knowledge of the housing dilemma and of
> their inability to remedy the problem, the court finds that the plaintiffs
> have made a *prima facie* showing that the defendants' decision to
> continue housing the plaintiffs in Unit 29K was unreasonable, and

3

evinced a deliberate indifference to a substantial risk of serious harm.

5 Record 1072. The district court explained that the defendants had failed to rebut this *prima facie* case with any evidence to support a finding of reasonableness. "While there was sufficient evidence placed before the Magistrate Judge concerning efforts to repair the roof of Unit 29K, there is nothing before the court which indicates that the state penitentiary was so crowded during the time period in question that the defendants `had no meaningful alternative' but to continue housing inmates in Unit 29K." 5 Record 1072-73. The district court stated that there was no evidence placed before the court regarding the availability or expense of temporary housing such as a "quick-bed" facility, the renting or purchasing of manufactured housing, or even tents. Also, there was no proof regarding the feasibility of converting the use of other buildings at the penitentiary for use as temporary housing until the roof leak was fixed. The district court opined that the defendants had the opportunity to present such evidence to rebut the plaintiffs' *prima facie* showing but did not do so.

The district court observed that it could take judicial notice of generally overcrowded conditions at Parchman throughout the years yet declined to do so. According to the district court, judicial notice was an incomplete substitute and could not be stretched to protect the defendants in this case. The district court held:

> The undersigned cannot take judicial notice of the fact that the state penitentiary was so financially and logistically constrained during the time period at bar that no alternative space was reasonably available for the inmates of Unit 29K. In light of the admitted knowledge on the part of the defendants regarding the living conditions in Unit 29K, this court sees no alternative but to find that the defendants subjectively knew of a substantial risk of serious harm to the plaintiffs in this case and disregarded that risk by failing to take reasonable measures to abate it.

5 Record 1073. The district court found for the plaintiffs and entered judgment for them in the amount of $2,000 each for a total verdict against the defendants of $10,000. The defendants appealed.

## Discussion

On appeal from a bench trial, this court reviews factual findings for clear error and issues of

4

law de novo. <u>Odom v. Frank</u>, 3 F.3d 839, 843 (5th Cir. 1993). If the factfinder's account of the evidence is plausible, this court may not reverse it. Also, when two views of the evidence are permissible, "the factfinder's choice between them cannot be clearly erroneous." <u>Anderson v. City of Bessemer City</u>, 470 U.S. 564, 573-74 (1985).

The Eighth Amendment, made applicable to the states through the Fourteenth Amendment, prohibits cruel and unusual punishment as a condition of imprisonment. Consequently, the conditions under which prisoners are confined are subject to scrutiny under the Eighth Amendment. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). Prison officials must provide humane conditions of confinement, including adequate shelter, and must take reasonable measures to guarantee the safety of the inmates. <u>Id</u>. To establish an Eighth Amendment violation, an inmate must first show that the deprivation alleged, viewed objectively, is sufficiently serious. Specifically, a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. <u>Farmer</u>, 511 U.S. at 834. Next, the prison official must have a sufficiently culpable state of mind. <u>Id</u>.

This court reviews a prisoner's allegations challenging the conditions of confinement under the "deliberate indifference" standard. <u>Wilson v. Seiter</u>, 501 U.S. 294, 302-03 (1991). To establish deliberate indifference in the context of the Eighth Amendment, a prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to inmate health or safety could be drawn; and (2) drew an inference that such potential for harm existed. <u>Farmer</u>, 511 U.S. at 837. A prison official acts with deliberate indifference under the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Id</u>. at 847. Prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. Prison officials who act reasonably cannot be found liable under the Eighth Amendment. <u>Id</u>. at 844-45.

The appellants argue that the district court erred in finding that they violated the plaintiffs' Eighth Amendment rights by not providing them with minimally safe housing. They contend that the

5

district court could have taken judicial notice of severe overcrowding at the State Penitentiary. Appellants further emphasize that they explained during trial that prison officials have no authority to house inmates in facilities not approved by the court and that all approved places were full. They challenge the district court's finding that they continued to house the plaintiffs in Unit 29K and failed to present evidence at trial to show that there were no feasible housing alternatives. They argue that the evidence of their repairs upon becoming aware of the problem proves that they were not deliberately indifferent. They also dispute the district court's finding that the leaking roof caused Unit 29K to be unsafe to the extent that the plaintiffs were deprived of a basic human need. While appellants concede that they could be considered negligent at most, they request reversal of the district court's decision.

Appellants also raise other errors in the district court's judgment. They argue that the district court erred in holding all the defendants liable without making findings of individual culpability. They correctly point out that the only allegations made by the plaintiffs against correctional officers Shirley Taylor and Brenda Brown related to the mail policy. They note that the basis of the district court's finding of liability was the failure to make a housing change, and they argue that the district court failed to make any findings, and that the record does not contain any evidence, as to which defendants, if any, had the authority to make such a housing change. Finally, appellants point out an error in the district court's judgment involving plaintiff Larry P. Jackson. Jackson filed a voluntary motion to dismiss which was granted before the district court entered final judgment in the case. Jackson was no longer a party to the case when the district court granted judgment in his favor.

Both the magistrate judge and the district court found that the prisoners' testimony about the conditions created by the water leaks were sufficiently serious as to deprive the plaintiffs of minimally safe housing. We agree. The plaintiffs testified that there was so much water on the floor at times that the electrical receptacles would spark and smoke and that they feared electrocution. Based on this testimony, the district court's finding that the conditions were sufficiently serious as required to establish an Eighth Amendment violation was not clearly erroneous.

6

However, the district court's finding that the prison officials failed to present evidence to show that they took reasonable measures to abate the problem must be reversed. We are mindful that the prison officials must take reasonable efforts to abate the problem even if harm is ultimately not averted. Farmer, 511 U.S. at 847. It is undisputed that from the time prison officials became aware of the leaking roof at Unit 29K in December 1991, they began measures to repair the leaks. They continuously performed in-house repairs, which stopped most of the leaks, up until the time the roof was replaced in May 1992.

## Conclusion

For the reasons ascribed, we REVERSE the judgment of the district court.